# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re: ) | |
| ) | |
| BK TECHNOLOGIES, INC., ) | Case No. 20-bk-170 |
| ) | |
| Debtor. ) | Chapter 11 |
| _____ ) | |

## MEMORANDUM OPINION

Pending are two matters: (1) the Motion to Dismiss Case filed by creditors Dominic and Sherrie Cottrell (the "MTD") [dckt. 54]; and (2) the Debtor's Amended Plan (the "Plan") [dckt. 63]. The MTD was filed on May 22, 2020. The Debtor filed a Response on June 1, 2020 [dckt. 64], and an Amended Response on June 8, 2020 [dckt. 67]. On June 11, 2020, creditor Garden Grill Steakhouse, LLC ("Garden Grill") joined in the MTD [dckt. 70].[1] The Debtor filed the Plan on June 1, 2020. The United States Trustee ("UST") filed its Objection on August 14, 2020 [dckt. 92], and Garden Grill and the Cottrells filed their joint Objection on August 18, 2020 [dckt. 93]. Both matters came before the Court for a final evidentiary hearing on November 16, 2020. Following that hearing, the Court ordered post-hearing briefs and proposed findings of fact and conclusions of law from each party. All briefing having been received, the matters are ready for disposition.

The Cottrells and Garden Grill seek dismissal of the Debtor's case and oppose its third amended plan based upon, among other things, the assertion that the Debtor acted in bad faith filing its petition for relief under Chapter 11. The UST opposes confirmation of the Debtor's third amended plan insofar as it contains unwarranted releases for non-debtor third parties.

---

[1] On June 10, 2020, the court convened a telephonic scheduling conference at which time counsel for the Cottrells indicated she was also recently retained by Garden Grill, who would be joining in the Cottrells motion. Garden Grill subsequently filed its joinder stating facts it contends support dismissing the Debtor's case and adopting the Cottrells legal basis for dismissal.

For the reasons stated herein, the court will enter a separate order granting the MTD. Based upon the court's disposition in that regard, it need not consider the Debtor's proposed plan, nor the objections thereto.

## I.  BACKGROUND

Prepetition, the Debtor operated a construction business. Brandon Klink and Michael Arlia each hold 50% of the Debtor's equity. They also constitute the membership of MB Industries, LLC. In May 2019, the Debtor stopped operating. At that time, the Cottrells and Garden Grill were among the Debtor's customers—perhaps the only two. Specifically, the Cottrells contend that they contracted with the Debtor in August 2018 for home renovations, which they assert the Debtor was to complete by April 2019, but remained incomplete in May 2019. Garden Grill purportedly contracted with the Debtor in January 2019 for the construction of its restaurant, which was to be substantially completed by July 2019. Both projects remained unfinished when the Debtor ceased operations.

To accomplish the cessation of its business, the Debtor purportedly sold its assets to Neighborhood Roofing, Inc., an entity with which the Debtor already had a significant relationship. The Debtor and Neighborhood Roofing agreed on a purchase price of $100,000, which Neighborhood Roofing was to pay in quarterly installments of $25,000. According to the record, $25,000 remains unpaid. Although not memorialized in a formal writing, the parties to the sale understood informally that Neighborhood Roofing would absorb the Debtor's employees, and that Mr. Klink and Mr. Arlia would assist in a smooth transition of customer and employee relations. Additionally, the Debtor anticipated that Neighborhood Roofing would complete the Cottrell and Garden Grill contracts, despite those contracts being unassignable. In any event, the Debtor stopped operating. According to the Debtor, it used the sale proceeds to pay vendors and other creditors as it concluded its business. The Debtor does not currently have any employees or contracts, nor does it own any equipment, tools, real estate, or vehicles. It has no plans to continue with the business in the future.

Ultimately, in October 2019, the Cottrells filed a civil action in the Circuit Court of Ohio County, West Virginia (the "State Court"). In addition to the Debtor, the Cottrells brought their claims against the Debtor's equity holders, Neighborhood Roofing, and several other entities and individuals. On February 27, 2020, more than 272 days after ceasing operations, the Debtor filed its petition for relief under Subchapter V of Chapter 11.

## II. ANALYSIS

The Cottrells and Garden Grill (collectively, the "Creditors") seek dismissal of the Debtor's case and oppose the Debtor's third amended plan based upon their assertion that the Debtor filed its case in bad faith. Specifically, they contend that dismissal is appropriate because the Debtor filed its case simply as a litigation strategy after the Cottrells instituted their civil action in the Circuit Court of Ohio County, West Virginia. In support of dismissal, they assert that the Debtor cannot reorganize because it sold its assets prepetition. That fact also supports the Creditors' opposition to the Debtor's proposed plan based upon its "fail[ure] to satisfy the reorganizational purpose of subchapter 5 small business filings." Additionally, the Creditors oppose the Debtor's plan insofar as it proposes to inappropriately classify the unsecured claim of MB Industries, LLC,[2] and because the Plan is based upon the Debtor's proposed injunction protecting Mr. Klink and Mr. Arlia and entities they own or control. That injunctive language also serves as the sole basis for the UST's opposition to confirmation.

The Debtor contends it filed its case in good faith, to simply resolve loose ends following the prepetition sale of its business. In that regard, the Debtor asserts that it chose to stop operating based upon declining financial circumstances, and it hoped to achieve continuity for its employees and customers by selling its assets to Neighborhood Roofing. Additionally, the Debtor points to claims by The Huntington National Bank and the West Virginia State Tax Department to support its notion that this is not a two-party dispute. The Debtor contends that Chapter 11 of the Bankruptcy Code permits the confirmation of a liquidating plan. Regarding its proposed injunction benefitting its equity holders and entities they own or control, the Debtor contends that the court should consider significant MB Industries' proposed subordination of its claim, and expand applicable law to include the injunction proposed here.

Based upon the parties' arguments and the record before the court, the court finds it appropriate to first consider the Creditors' argument regarding the Debtor's bad faith because it permeates both the motion to dismiss and the opposition to the Debtor's proposed plan. Among other support for their motion, the Creditors note that the Debtor cannot reorganize because it sold its assets prepetition. The Creditors therefore contend that the only apparent purpose for filing

---

[2] The Debtor asserts that it has a lender-creditor relationship with MB Industries, LLC, a company also jointly owned by Mr. Klink and Mr. Arlia. However, MB Industries, LLC, was not originally listed as a creditor on the schedules; the alleged lending relationship came to light later. The Debtor points to its "chaotic" records as a partial explanation for the snafu, but also explains that there was no effort made to fix the records because it was not cost-effective.

was to enjoin their collection activity against the Debtor and its principals. In response, the Debtor simply notes the potential for liquidation in Chapter 11 and specifically points in that regard to the "sale" of a single truck securing the claim of The Huntington National Bank. Otherwise, the Debtor focuses on some of the Creditors' other arguments, including the assertion that this case is simply a two-party dispute.

"[O]n request of a party in interest, and after notice and a hearing, the court shall . . . dismiss a case under this chapter . . . for cause . . . ." 11 U.S.C. § 1112(b)(1). Although Congress did not explicitly define "cause," it enumerated a non-exhaustive list of what qualifies. *See* 11 U.S.C. § 1112(b)(4). Additionally, "'[t]he right to file a Chapter 11 bankruptcy petition is conditioned upon the debtor's good faith—the absence of which is cause for summary dismissal.'" *In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 279 (4th Cir. 2007); *see also Carolin Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989); *In re Nichols*, Case No. 2:16-bk-20427, 2017 WL 160865, at *3 (Bankr. S.D.W. Va. Jan. 13, 2017). In fact, "the ability of a bankruptcy court to conduct a threshold inquiry into the good faith of a petitioner is 'indispensable to proper accomplishment of the basic purposes of Chapter 11 protection.'" *In re Premier*, 492 F.3d at 279 (quoting *Carolin Corp.*, 886 F.3d at 698).

It is well settled in this circuit that "a lack of good faith in filing a Chapter 11 petition requires a showing of 'objective futility' and 'subjective bad faith.'" *In re Premier*, 492 F.3d at 279-80 (citing *Carolin Corp.*, 886 F.2d at 700-01). As explained by the Fourth Circuit,

> The objective test focuses on whether there exists the realistic possibility of an effective reorganization. The subjective test asks whether a Chapter 11 petition is motivated by an honest intent to effectuate reorganization or is instead motivated by some improper purpose. Subjective bad faith is shown where a petition is filed to abuse the reorganization process or to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay.

*Id.* at 280 (internal quotations and citations omitted). Regarding the objective test, it is "designed to insure that there is embodied in the petition 'some relation to the statutory objective of resuscitating a financially troubled [debtor].'" *In re Paolini*, 312 B.R. 295, 304 (Bankr. E.D. Va. 2004) (quoting *Carolin*, 886 F.2d at 701). And, in terms of the subjective inquiry, the aim is to determine whether the Debtor's intent is to abuse the process and cause hardship and delay to creditors "without intent or ability to reorganize his financial activities." *Id.* at 304-05 (quoting *Carolin*, 886 F.2d at 702). "The overall aim of the twin-pronged inquiry must of course be to

determine whether the purposes of the Code would be furthered by permitting the Chapter 11 petitioner to proceed past filing." *Carolin*, 886 F.2d at 701.

"If the movant demonstrates 'cause' under subsection 1112(b)(1), the burden shifts to the nonmovant . . . to show 'unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate.'" *In re U.S.A. Parts Supply*, 619 B.R. 619, 624 (Bankr. N.D. W. Va. 2020) (citing *Nichols*, 2017 WL 160865, at *3 (citation omitted)). Notably, however,

> The *Carolin* court made clear that the burden of establishing this two-pronged requirement is very high. The power to dismiss a bankruptcy petition at the outset of a case "is obviously one to be exercised with great care and caution. Decisions denying access at the very portals of bankruptcy, before an ongoing proceeding has even begun to develop the total shape of the debtor's situation, are inherently drastic and not lightly to be made.

*In re Bestwall LLC*, 605 B.R. 43, 48 (Bankr. W.D.N.C. 2019) (internal quotation omitted).

Having considered the record here in light of the applicable authority, the court finds it appropriate to dismiss the Debtor's case as having been filed in bad faith. Specifically, the court finds that both prongs of the *Carolin* test weigh in favor of dismissal. First, the court finds that there is no bankruptcy purpose—reorganization or liquidation—for the Debtor to achieve. Despite the Debtor's assertion to the contrary, its case is not a liquidation under Chapter 11. Indeed, the Debtor stopped operating and sold its assets several months before deciding to seek Chapter 11 relief. The Debtor undoubtedly liquidated in May 2019 and sought protections of the Bankruptcy Code in February 27, 2020, three months after the Cottrells initiated their civil action in State Court. Although Chapter 11 may permit liquidation, the court finds the Debtor's characterization of its case in that regard to miss the mark. It is true that the Debtor also owned a single 2019 GMC Sierra when it filed its bankruptcy petition. That, however, was the only asset other than cash and accounts receivable that the Debtor identified on Schedule A/B; it was overencumbered by a lien securing a loan from The Huntington National Bank, and ultimately, the Debtor "liquidated" that vehicle by selling it to an entity with common ownership for $500 and the assumption of The Huntington National Bank indebtedness. That, in and of itself, does not make this case a Chapter 11 liquidation.

For virtually the same reasons, the court also finds that the Debtor's case was not motivated by an honest intent to reorganize or liquidate for the benefit of creditors. As the Debtor noted, it

liquidated prepetition and paid what creditors it believed it had. Only after being sued by the Cottrells did the Debtor feel compelled to seek bankruptcy protection, possessing virtually nothing to liquidate or reorganize. Moreover, in its proposed Plan, the Debtor sought to enjoin collection activity against its equity holders and related entities despite such relief being unnecessary as the Debtor was simply an empty shell. Put simply, the court does not perceive any purpose of the Bankruptcy Code served by this filing. To the contrary, the court believes this case served as a proposed vehicle to insulate the Debtor's equity holders and related entities.

### III. CONCLUSION

Based upon the foregoing, and consistent with Fed. R. Bankr. P. 7052 and 7058, the court will enter a separate order granting the MTD and dismissing this case.